UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

CAROL DAVIS, JOHN DAVIS, and
MICHELLE TORIGIANI,

        Plaintiffs,

    v.

LOCKHEED MARTIN, et al.,

           Defendants.
_____

NO. CIV. S-03-1649 WBS DAD
NO. CIV. S-04-0300 WBS GGH

MEMORANDUM AND ORDER
RE: MOTION FOR SUMMARY
JUDGMENT

LAURIE H. LABARE, et al.,

        Plaintiffs,

    v.

LOCKHEED MARTIN, et al.,

        Defendants.
_____

TRIAD INTERNATIONAL MAINTENANCE
CORPORATION, and TIMCO AVIATION
SERVICES, INC.,

        Third-Party Plaintiffs,

    v.

HAWKINS & POWERS AVIATION, INC.,

        Third-Party Defendant.
_____

1

This case is about liability for an airplane crash in 2002.  The heirs of those who died in that crash have sued, among others, defendant Aero Corporation, who worked on the plane in 1984, and two other related companies, Triad International Maintenance Corporation and TIMCO Aviation Services, Inc. (collectively "TIMCO").  TIMCO, in turn, has filed a third-party complaint seeking contribution, equitable indemnification, and declaratory relief against the decedents' employer, third-party defendant Hawkins & Powers Aviation, Inc. ("Hawkins"), who owned and operated the plane at the time of the crash.  Hawkins now moves for summary judgment on TIMCO's claims pursuant to Federal Rule of Civil Procedure 56.

I.   Factual and Procedural Background[1]

On June 17, 2002, a Lockheed C-130A airplane broke apart in flight while executing a fire retardant delivery near Walker, California.  The airplane was registered to and operated by Hawkins, who had obtained it in 1988.  All three flight crew members perished in the crash.  Among them were Craig LaBare and Michael Davis ("decedents"), two California residents employed by Hawkins.  Decedents' heirs were compensated for the deaths of their family members under Hawkins' workers' compensation insurance policy.  Heirs Laurie H. LaBare and Carol Davis are California residents.

Subsequent testing at the direction of the National Transportation Safety Board ("NTSB") revealed cracks under the

---

[1]   Unless otherwise noted, all of these facts are undisputed.

2

1  doublers[2] and heavy stress placed on the wings during fire-

2  fighting aerial maneuvers.  Maintenance protocol for the plane

3  included crack inspection instructions.  Hawkins admits that it

4  subscribed to technical bulletins from the Federal Aviation

5  Administration ("FAA") which warned that the C-130A was

6  susceptible to cracking in the wing structure.  TIMCO contends

7  that Hawkins chose to ignore those bulletins.

8        Hawkins is a Wyoming corporation with its principal

9  place of business in Wyoming.  The TIMCO defendants are Delaware

10 corporations with their principal places of business in North

11 Carolina.  TIMCO and Hawkins had no contractual or other like

12 relationship, and no express indemnity agreement between them.

13 Hawkins contends that TIMCO's claims fail as a matter of law.

14 II.  Discussion

15       The court must grant summary judgment to a moving party

16 "if the pleadings, depositions, answers to interrogatories, and

17 admissions on file, together with the affidavits, if any, show

18 that there is no genuine issue as to any material fact and that

19 the moving party is entitled to judgment as a matter of law."

20 Fed. R. Civ. P. 56(c).  The party adverse to a motion for summary

21 judgment may not simply deny generally the pleadings of the

22 movant; the adverse party must designate "specific facts showing

23 that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e);

24 Celotex Corp. v. Catrett, 477 U.S. 317 (1986).  Simply put, "a

25 summary judgment motion cannot be defeated by relying solely on

26

27       [2]   Doublers are rectangular plates installed on the lower
28 wing surfaces overlapping the forward and middle wing panels.
   (See Ryan Decl. Ex. 2 (NTSB Report) at 25).

conclusory allegations unsupported by factual data." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).  The nonmoving party must show more than a mere "metaphysical doubt" as to the material facts. Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986).

     A.   Request for Declaratory Relief

       TIMCO seeks declaratory relief regarding any rights it has to contribution and/or equitable indemnity from Hawkins for any judgment entered against it on behalf of the heirs of Hawkins's former employees.  This requested relief completely overlaps TIMCO's separate claims for contribution and equitable indemnity.  Declaratory relief should not be refused merely because there is another adequate remedy available to the moving party.  See Fed. R. Civ. P. 57; Delno v. Market St. Ry. Co., 124 F.2d 965, 968 (9th Cir. 1942).  However, "[i]t is well settled . . . that a declaratory judgment may be refused where it would serve no useful purpose. . . ." McGraw-Edison Co. v. Preformed Line Prods. Co., 362 F.2d 339, 343 (9th Cir. 1966)(citing Yellow Cab v. City of Chicago, 186 F.2d 946, 950-51 (7th Cir. 1951)). TIMCO's election to seek overlapping remedies in this court makes its request for declaratory relief superfluous.  Therefore, the court will grant Hawkins's motion to deny this request.

     B.   Choice of Law

       The parties dispute whether California law or Wyoming law should govern TIMCO's two remaining claims.  When faced with a conflict of laws, a district court sitting in diversity applies the choice of law rules of the forum state in which it sits. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487 (1941).

4

California applies a government interest analysis to resolve choice-of-law disputes. Tucci v. Club Mediterranee, 89 Cal. App. 4th 180, 188 (2001). This analysis involves up to three steps: First, the court determines whether the foreign law actually differs from that of the forum. If it does not differ, there is no choice-of-law problem. Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law to determine whether a true conflict exists. Id. at 189. If only one state has a legitimate interest in the application of its law, the court follows the law of that state. Hurtado v. Superior Court, 11 Cal. 3d 574, 580 (1974). But if both jurisdictions have a legitimate interest in the application of their own law, the court takes a third step and analyzes the comparative impairment of the interested jurisdictions, applying the law of the state whose interest would be more impaired if its law were not applied. Tucci, 89 Cal. App. 4th at 189.

With respect to TIMCO's contribution claim, there is no choice-of-law issue. Both California and Wyoming law preclude third-party tortfeasors from seeking contribution from a plaintiff's concurrently negligent employer. E.B. Wills Co. v. Superior Court, 56 Cal. App. 3d 650 (1976)(Cal. Lab. Code § 3864 precludes third-party wrongdoer's contribution claim against concurrently negligent employer); Schneider Nat'l Inc. v. Holland Hitch Co., 843 P.2d 561, 570 (Wyo. 1992)(noting statutory repeal of Wyoming's cause of action for contribution in 1986); Cities Serv. Co. v. Northern Prod. Co., 705 P.2d 321, 325 (Wyo. 1985) (contribution claim brought by third-party tortfeasor against plaintiff's employer barred by Wyoming Workers' Compensation

1  Act).  Therefore, regardless of which state's law applies,
2  TIMCO's contribution claim must be denied.

3          TIMCO acknowledges that, under California law, their
4  indemnity claim also fails.  (See Third-Party Pls.' Opp'n at
5  6(citing Cal. Labor Code § 3864(limiting employer's indemnity
6  liability for injuries caused to its employees to situations
7  involving express indemnity agreements))).  However, TIMCO
8  contends that their indemnity claim survives under Wyoming law.

9          Neither party has cited, nor has the court found, any
10 case dealing directly with the issue of whether, under Wyoming
11 law, workers' compensation immunity bars third-party claims for
12 equitable indemnity.  However, Wyoming has long held that
13 workers' compensation provisions do not bar third-party indemnity
14 claims based on express indemnity agreements.  Pan Am. Petroleum
15 Corp. v. Maddux Well Serv., 586, P.2d 1220, 1224 (Wyo. 1978).
16 In the context of a third-party claim for implied contractual
17 indemnity against an employer, the Supreme Court of Wyoming also
18 recently held that "workers' compensation immunity does not bar
19 third-party claims based on implied indemnity."  Gainsco Ins. Co.
20 v. Amoco Prod. Co., 53 P.3d 1051 (Wyo. 2002)(addressing implied
21 contractual indemnity).  Under Wyoming law, equitable indemnity
22 claims are based on implied indemnity.  See Schneider, 843 P.2d
23 at 574(stating the elements of a cause of action for "equitable
24 implied indemnity" under Wyoming law).  Therefore, the court
25 interprets Gainsco as extending Wyoming's erosion of workers'
26 compensation immunity to third-party claims for equitable implied
27 indemnity as well.  See Gainsco, 53 P.3d at 1069("[W]orkers'
28 compensation immunity does not protect employers from indemnity

6

actions brought by [] third parties.").  Thus, the laws of the two states would lead to disparate results if TIMCO had a claim under Wyoming law.

TIMCO, however, has no claim for equitable implied indemnity under Wyoming law.  To state such a claim, TIMCO would have to show:

> (1) an independent relationship with [Hawkins] the third-party defendant; (2) negligent breach by the third-party defendant of the duty created by the independent relationship; (3) under circumstances falling within the situations addressed in Restatement Torts (Second) § 886B(2); and (4) that the breach of the duty to the third-party plaintiff contributed to cause the injuries and damage to the original plaintiff.

Diamond Surface Inc. v. Brasel & Sims Constr. Co., 963 P.2d 996, 1003 (Wyo. 1998)(citing Schneider, 843 P.2d at 572, 575-79)(emphasis omitted).  TIMCO has produced no evidence that it ever had an independent relationship with Hawkins.  In fact, TIMCO's only connection to Hawkins, other than this lawsuit, appears to be their mutual involvement, at different times, with the airplane whose crash forms the basis of the lawsuit.  Furthermore, none of the situations addressed in the Second Restatement of Torts § 886B(2) applies here.[3]  Therefore, TIMCO's

---

[3]   Restatement Torts (Second) § 886B(2) applies only to instances in which:
(a) The indemnitee was liable only vicariously for the conduct of the indemnitor;
(b) The indemnitee acted pursuant to direction of the indemnitor and reasonably believed the directions to be lawful;
(c) The indemnitee was induced to act by a misrepresentation on the part of the indemnitor, upon which he justifiably relied;
(d) The indemnitor supplied a defective chattel or performed defective work upon land or buildings as a result of which both were liable to the third person, and the indemnitee innocently or negligently failed to discover the defect;
(e) The indemnitor created a dangerous condition of land or

1  equitable indemnity claim fails under both California and Wyoming

2  law.  These identical results moot any choice-of-law issue.

3        TIMCO's alternative basis for a supposed exception to

4  workers' compensation exclusivity does not change the court's

5  analysis.  TIMCO argues that, under both Wyoming and California

6  law, its indemnity claim survives because Hawkins's alleged

7  culpable negligence nullifies its general immunity from employee

8  tort suits.  TIMCO is wrong on both counts.  As noted above,

9  TIMCO has no claim for either contribution or indemnity under

10  Wyoming law.  Furthermore, Wyoming law is clear that employers

11  covered by Wyoming's Workers' Compensation Act enjoy absolute

12  immunity from such suits "regardless of whether the[ir] behavior

13  amounted to culpable negligence or an intentional tort."  Wessel

14  v. Mapco Inc., 752 P.2d 1363, 1367 (Wyo. 1988).[4]

15        California law is no less favorable to TIMCO's

16  position.  TIMCO cites Fermino v. Fedco, Inc., 7 Cal. 4th 701

17  (1994) for the proposition that California workers' compensation

18  laws except from their scope intentional employer conduct that

19  exceeds normal employment risks or contravenes fundamental public

20  policy.  (See Third-Party Pls.' Opp'n at 8).  However, that same

21

22  chattels as a result of which both were liable to the third
   person, and the indemnitee innocently or negligently failed to
   discover the defect;

23        (f) The indemnitor was under a duty to the indemnitee to
   protect him against the liability to the third person.

24

25  Restatement Torts (Second) § 886B(2).

26        [4] Wyoming law does allow tort claims against third-party
   co-employees where the plaintiff is an employee.  Poulos v. HPC,
   Inc., 765 P.2d 364 (Wyo. 1988).  However, no such claims have
27  been raised here, and the time for joinder of new parties has
   passed.  (See October 7, 2003 Status (Pretrial Scheduling) Order
28  at 2).  Therefore, this exception is irrelevant.

case states that violations of safety standards fall within the
scope of the workers' compensation bargain.  Id. at 723 n7("It is
an expected part of the [workers'] compensation bargain that
industrial injury will result from the employer's violation of
health and safety, environmental and similar regulations.")
(citing Johns-Mavnille Prod. Corp. v. Superior Court, 27 Cal.3d
465, 474-75 (1980)).  Therefore, no exemption from the workers'
compensation laws of either state applies here, and there is
still no conflict of law.

    C.   Rule 56(f) Reference

        In the next-to-last paragraph of their opposition,
TIMCO notes that they have not yet completed discovery regarding
Hawkins's alleged disregard of safety risks to its employees and
cites Federal Rule of Civil Procedure 56(f).  TIMCO apparently
seeks this discovery to bolster its argument that Hawkins's
culpable negligence exempts it from workers' compensation
exclusivity laws.  (See Third-Party Pls.' Opp'n at 8).  Rule
56(f) states that where

> . . . it appear[s] from the affidavits of a party
> opposing a motion [for summary judgment] that the party
> cannot for reasons stated present by affidavit facts
> sufficient to justify the party's opposition, the court
> may refuse the application for judgment or may order a
> continuance to permit affidavits to be taken or
> discovery to be had or may make such other order as is
> just.

Fed. R. Civ. P. 56(f).

        The Ninth Circuit has made it clear that "[r]eferences
in memoranda and declarations to a need for discovery do not
qualify as motions under Rule 56(f)."  Brae Transp. Inc. v.
Coopers & Lybrand, 790 F.2d 1439, 1443 (9th Cir. 1986).  "Rule

56(f) requires affidavits setting forth the particular facts expected from the movant's discovery." <u>Id.</u>  Failure to produce such affidavits is sufficient ground for denying discovery and proceeding to summary judgment.  <u>Id.</u>  Because TIMCO failed to submit the requisite affidavits, and has made no representation as to what specific information further discovery is expected to develop, its attempted Rule 56(f) request is denied.

IT IS THEREFORE ORDERED that Hawkins' motion for summary judgment on TIMCO's claims for contribution and indemnity and TIMCO's request for declaratory relief be, and the same hereby is, GRANTED.

DATED: April 18, 2005

_____
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE